**Dessie HARRISON, Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, a labor organization, and George Kourpias, Larry Downing, and James Johnston, individually, Defendants.**

**Civ. No. 92–1108–FR.**

United States District Court,
D. Oregon.

Dec. 3, 1992.

Gerri Sue Lent, Milwaukie, OR, for plaintiff.

Barrie J. Herbold, Robert D. Bulkley, Jr., Markowitz, Herbold, Glade & Mehlhaf, P.C., Portland, OR, for defendants.

## OPINION

FRYE, Judge:

The matter before the court is the motion of the defendants for change of venue (# 9).

## BACKGROUND

The plaintiff, Dessie Harrison, filed this action under the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, against the defendants, International Association of Machinists and Aerospace Workers (IAM), George Kourpias, Larry Downing, and James Johnston, officials of the IAM, alleging claims for sex discrimination.

The IAM maintains its headquarters in the State of Maryland. There are approximately 1,500 local unions affiliated with the IAM located in approximately 120 districts. A district is comprised of two or more local unions. Harrison is a member of Local # 1432 of the IAM located in the State of Oregon, which is in District # 24. Harrison was elected president of Local # 1432 and to offices in District Lodge # 24 in Portland, Oregon prior to 1982.

In 1982, Harrison was hired as a representative of the IAM assigned to its organizing department. The organizing department of the IAM has its main offices in the State of Maryland. The home station of

Harrison has always been and continues to be Milwaukee, Oregon. Harrison has organized membership drives for the IAM since 1986. From 1986 to the present, Harrison has lived in a number of states and is presently assigned to an organizing campaign in the State of South Carolina. The only time that Harrison actually worked in an organizing campaign close to her home station was from September, 1991 to January, 1992, when she was assigned to help organize the employees of Precision Castparts Corporation in Portland, Oregon.

The terms and conditions of Harrison's employment as a representative of the IAM are contained in a representative's agreement between the IAM and a union representing certain employees of the IAM, which is called the "IAM Representatives Association."

Pursuant to the terms and conditions of the representative's agreement, representatives of the IAM are typically assigned to work under a particular vice-president of the IAM. George Kourpias is the president and chief executive officer of the IAM. Larry Downing is the general vice president responsible for the work of the organizing department of the IAM, which seeks to organize workers throughout the United States. Kourpias and Downing work at the headquarters of the IAM in the State of Maryland and live in Washington, D.C. or its suburbs. James Johnston is a business agent for the IAM. His office is located in Portland, Oregon.

In her complaint, Harrison alleges that "[f]or most of her eleven year employment, [she] was one of two women Grand Lodge Representatives out of approximately 100 for the Union." *Id.* at para. 2. Harrison alleges claims for disparate impact and disparate treatment. In her claim for disparate impact, Harrison alleges that:

> In September 1991, plaintiff was assigned by defendant Downing, to organize Precision Castparts Corporation, located in Portland, Multnomah and Clackamas counties, Oregon.
>
> Plaintiff attempted to organize at Precision Castparts Corporation but was subjected to Union policies, procedures, and practices which had the effect of

unlawfully discriminating against her on the basis of her sex.

> Among those Union policies, procedures and practices that plaintiff suffered from were: 1) Failure to hire more women organizers to be organizing support for plaintiff; 2) Failure to utilize women, including plaintiff, in the same manner that male [Grand Lodge Representatives] were utilized; 3) Presentation of plaintiff to target female workers as a "model" Union staff member, knowing that plaintiff was a token; and 4) Failure to provide plaintiff with other women assistants, thereby isolating plaintiff in her onsite organizing job.
>
> The Union, by failing to hire, promote and utilize women within the staff, and by engaging in the practices and procedures set out in [the above paragraph], injured plaintiff by placing her under far more stress than male [Grand Lodge Representatives], by giving her less employment opportunity, unequal pay, and by crediting her with unequal time for retirement, sick leave, and vacation purposes. Plaintiff has been passed over for promotion and has seen male [Grand Lodge Representatives] with less seniority and experience promoted or given pay increases instead.
>
> To remedy her injury, plaintiff asks that she be appointed to the next available administrative assistant's (AA) position and that her name be placed upon the next slate of candidates for election to a general vice-presidency; an immediate upgrade to the beginning salary of an administrative assistant; interest upon the backpay she would have received if she had been promoted; the immediate Union hire of ten women staff members to be [Grand Lodge Representatives]; and correction of her vacation, sick leave and retirement credits to reflect her years of service to the Union. . . .

*Id.* at paras. 5–9.

In support of her disparate treatment claim, Harrison adds the following allegations:

From September 1991 until March 1992, plaintiff tried to organize the workers at Precision Castparts Corporation in Portland, Oregon, and was subjected by the Union to an intentionally hostile working environment.

Among other things, most of those Union men who were assigned to help in the organizing campaign, consistently used sexual references, sexual innuendo and generally obscene language and engaged in other unprofessional conduct, all of which had the effect of undermining plaintiff's authority both within the Union and outside to the target audience. Defendant Johnston, who should have prevented such conduct, made no effort to stop it, and, in fact, participated in it. The obscene language and lewd gestures and remarks had the effect of degrading plaintiff personally and was a constant source of embarrassment to her while working with the Precision Castparts Corporation women workers, many of whom were on the organizing committee.

Plaintiff also experienced an intentional difference in treatment from male organizers, based upon her sex, by being, among other things, denied her own organizing office and the usual organizing assistance provided to male [Grand Lodge Representatives] during a major organizing effort by the Union during the Precision Castparts campaign.

After asking defendant Kourpias, the Union president, about the enforcement mechanism for the Union's anti-sexual harrassment policy, plaintiff was, in March 1992, abruptly removed from her organizing position in the Precision Castparts Corporation campaign. She was transferred to Stillwater, Oklahoma where she received no files and no instructions for ongoing organizing.

At the time of her transfer, plaintiff was ordered by Defendant Downing to have no further contact with any of the Precision Castparts organizing committee. When plaintiff complained to defendant Kourpias about this treatment, defendant Downing suspended plaintiff for five days, without pay.

*Id.* at paras. 11–15.

## CONTENTIONS OF THE PARTIES

Defendants move the court for an order transferring this case to the United States District Court for the District of Maryland on the grounds that 1) venue of this case is proper only in the United States District Court for the District of Maryland pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1406(a), and 42 U.S.C. § 2000e–5(f)(3); and 2) in the alternative, that transfer of the case to the United States District Court for the District of Maryland would best serve the convenience of the parties and witnesses, and would therefore serve the interests of justice.

Harrison opposes a change of venue. Harrison contends that venue is proper in the District of Oregon; that defendants are better able to defend this action in the District of Oregon than she is able to prosecute the case in the District of Maryland; that the alleged discrimination occurred in the State of Oregon; and that the District of Oregon has a strong interest in eliminating unlawful discrimination here.

## APPLICABLE LAW

42 U.S.C. § 2000e–5(f)(3) establishes the proper venue for actions under Title VII:

Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in

which the action might have been brought.

## ANALYSIS AND RULING

■ Defendants concede that the alleged unlawful employment practices took place in the District of Oregon and therefore do not contest the exercise of personal jurisdiction over them by this court. IAM, Kourpias and Downing assert, however, that they are not "found" in the federal District of Oregon, and that under section 2000e–5(f)(3), venue is only proper in the federal district in which they are physically present. Because defendants are physically present in the State of Maryland, they argue that venue in the District of Oregon is not proper.

Harrison asserts that these defendants are properly "found" in the District of Oregon for the purposes of section 2000e–5(f)(3) because they are present in the District of Oregon through their agent, Johnston, and therefore these defendants are subject to the jurisdiction of this court.

Black's Law Dictionary (Fifth Edition) defines the term "found" as follows:

A person is said to be "found" within a state for purposes of service of process when actually present therein. But only if a person is in a place voluntarily and not by reason of plaintiff's fraud, artifice, or trick for purpose of obtaining service. It does not necessarily mean physical presence; e.g. defendant who, after removal of action for breach of contract to federal court, entered general appearance, defended on the merits, and filed counterclaim, was "found" in the district. As applied to a corporation it is necessary that it be doing business in such state through an officer or agent or by statutory authority in such manner as to render it liable then to suit and to constructive or substituted service of process. A corporation is "found" in a district for venue purposes if it is subject to personal jurisdiction in that district. (Citations omitted).

In *Arrocha v. Panama Canal Comm'n,* 609 F.Supp. 231, 234 (E.D.N.Y.1985), the court explained that:

In determining proper venue under [section 2000e–5(f)(3)], a court must first look to the situs of any one of the first three criteria set forth in § 2000e–5(f)(3). The court may look to the district in which the employer's principal office is located *only* if venue cannot be laid in one of the other three possible districts specified in the statute. (Citations omitted). This is so because the "principal office" portion of the venue provision in Title VII was enacted to cover the "rare case" when the employer could not be found in one of the other three districts. 110 Cong.Rec. 12723. Moreover, the venue provision has been held to demonstrate Congress' clear intent "to limit venue to the judicial districts concerned with the alleged discrimination[.]" *Stebbins v. State Farm Mutual Automobile Ins. Co.,* 413 F.2d 1100, 1102 (D.C.Cir.), *cert. denied,* 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969).

Section 2000e–5(f)(3) is not a new provision. This section has never been interpreted to require the physical presence of a defendant and has consistently been applied to require only the legal presence of a defendant, that is, the ability of the plaintiff to bring the defendant before the court in one of the other three possible districts specified in the statute. *See, e.g., Stebbins v. State Farm Mut. Auto. Ins. Co.,* 413 F.2d 1100, 1102 (D.C.Cir.), *cert. denied,* 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969).

The District of Oregon is the judicial district in which the allegedly unlawful employment practice was committed, and these defendants do not challenge this court's personal jurisdiction over them. This is not one of those rare cases where the employer could not be found in one of the other three districts specified by the statute. Therefore, defendants' motion to transfer on the grounds that venue in this court is not proper is denied.

■ In the alternative, defendants move the court to transfer this case to the United States District Court for the District of Maryland on the grounds that such a transfer would best serve the convenience of the

parties and witnesses and the best interests of justice.

Harrison argues that a plaintiff's choice of forum should ordinarily prevail, and that a transfer to the District of Maryland would serve only to shift the burden of inconvenience from defendants to her.

In *Ius v. Butcher*, 680 F.Supp. 343, 348 (D.Or.1987) (Frye, J.), this court listed seven factors which govern a transfer for the "interest of justice" under 28 U.S.C. § 1404(a) in addition to the "convenience of parties" factor as follows:

    1. the relative ease of access to sources of proof;

    2. the amenability of unwilling witnesses to service of process;

    3. the cost of attendance at trial of willing witnesses;

    4. the relation of the community in which the courts and jurors are required to serve to the occurrence at issue in the litigation;

    5. the accessibility of premises involved in the litigation;

    6. the relative congestion of the court dockets and prospects for earlier trial; and

    7. in a diversity case, the relative familiarity of the courts with the state law supplying the applicable rules of decision.

This court must balance the preference accorded to a plaintiff's choice of forum with the burden on the defendant of litigating in an inconvenient forum. The alleged discrimination at Precision Castparts Corporation took place in the District of Oregon. Harrison's witnesses and Johnston are located in the District of Oregon. The District of Oregon has a strong interest in eliminating unlawful discrimination which takes place in the District of Oregon. Jurors living in the State of Oregon and the federal courts here are fully available and equipped to resolve such matters. There is no indication that Harrison would get an earlier trial date in the District of Maryland.

The court finds that to transfer this case to the United States District Court for the District of Maryland would only serve to shift the burden of inconvenience from de-

fendants to Harrison, and therefore Harrison's choice of forum should be honored. The interests of justice do not require the transfer of this case under 28 U.S.C. § 1404(a).

## CONCLUSION

Defendants' motion for change of venue (# 9) is denied.